No. 20-56016

———————————————

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

TRENDSETTAH USA, INC. ET AL,

*Plaintiffs-Appellants*,

v.

SWISHER INTERNATIONAL, INC.,

*Defendant-Appellee*

———————————————

Appeal from United States District Court for the Central District of California
Civil Case No. 14-cv-01664 (Honorable James V. Selna)

———————————————

**TRENDSETTAH'S MOTION TO AMEND MANDATE**

———————————————

Thomas C. Goldstein
Eric F. Citron
Erica Oleszczuk Evans
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
202.362.0636 (tel)
866.574.2033 (fax)

Mark Poe
Randolph Gaw
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
415.766.7451 (tel)
415.737.0642 (fax)

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 3

I.    THE COURT SHOULD AMEND THE MANDATE TO CLARIFY THE ALLOWANCE OF PRE- AND POSTJUDGMENT INTEREST, WHILE LEAVING THE CALCULATIONS TO THE DISTRICT COURT. ............ 3

II.   CIRCUIT PRECEDENT AND SUBSTANTIVE FLORIDA LAW REQUIRE THAT PREJUDGMENT INTEREST ACCRUE UP THROUGH THE DATE OF THE FINAL, *ENFORCEABLE*, JUDGMENT. ................... 5

CONCLUSION .....................................................................................................10

CIR. R. 27-1 STATEMENT ..................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*,
　98 F.3d 1206 (9th Cir. 1996) ................................................................. *passim*

*Burton Family Partnership v. Luani Plaza, Inc.*,
　276 So.3d 920 (Fla. Dist. Ct. App. 2019) ......................................................... 10

*City of Tallahassee v. Block Land & Finance Co.*,
　705 So.2d 714 (Fla. Dist. Ct. App. 1998) ..................................................... 5, 10

*Home Indem. Co. v. Lane Powell Moss and Miller*,
　43 F.3d 1322 (9th Cir. 1995) ............................................................................ 5

*Lagstein v. Certain Underwriters at Lloyd's of London*,
　725 F.3d 1050 (9th Cir. 2013) .......................................................................... 4

*Northrop Corp. v. Triad Intern. Marketing, SA*,
　842 F.2d 1154 (9th Cir. 1988) .................................................................. 1, 4, 7

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life
　Activities*,
　518 F.3d 1013 (9th Cir. 2008) ...................................................................... 1, 3

*SCIE LLC v. XL Reinsurance Am., Inc.*,
　397 F. App'x 348 (9th Cir. 2010) ................................................................... 11

*SEB S.A. v. Sunbeam Corp.*,
　476 F.3d 1317 (11th Cir. 2007) .............................................................. 5, 9, 10

*Summerton v. Mamele*,
　711 So.2d 131 (Fla. Dist. Ct. App. 1998) .......................................................... 9

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
　761 F. App'x 714 (9th Cir. 2019) ..................................................................... 8

*Tronzo v. Biomet, Inc.*,
　318 F.3d 1378 (Fed. Cir. 2003) ........................................................................ 4

**Statutes**

28 U.S.C. § 1961...................................................................................... 2, 4, 6, 11

Fla. Stat. § 55.03 ...............................................................................................4

Fla. Stat. § 687.01 .............................................................................................4

## INTRODUCTION

Under Rule 37(b), "[i]f the court modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest." Fed. R. App. Proc. 37(b). Here, the Panel's opinion instructed the district court to reinstate the $9,062,679 jury verdict rendered on Trendsettah's breach of contract claims, but the mandate does not contain any instructions as to interest.

The Advisory Committee's note to Rule 37 explains that where a mandate fails to specify the treatment of interest, the party entitled to interest is to bring a motion seeking amendment of the mandate:

> Since the rule directs that the matter of interest be disposed of by the mandate, in cases where interest is simply overlooked, a party who conceives himself entitled to interest from a date other than the date of entry of judgment in accordance with the mandate should be entitled to seek recall of the mandate for determination of the question.

Fed. R. App. Proc. 37, Ad. Comm. note. Circuit precedent reinforces this point, holding that "[i]f our mandate omits such instructions, a party that believes it is entitled to interest from a date other than the date of entry of judgment on remand *must* expeditiously seek reform of the mandate." *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activities*, 518 F.3d 1013, 1022 (9th Cir. 2008) (emphasis added); *see also Northrop Corp. v. Triad Intern. Marketing, SA*, 842 F.2d 1154, 1155 (9th Cir. 1988) (holding, on a motion to amend a mandate

1

that "said nothing about interest," that the Court was required to amend the mandate to determine the dates on which pre- and post-judgment interest should attach).

Accordingly, in conformance with substantive Florida law and this Circuit's precedent in *Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1211 (9th Cir. 1996), Trendsettah requests that the Panel recall and amend the mandate, to clarify that Trendsettah is entitled to prejudgment interest on its state-law contract claims up until the date that the district court enters its amended judgment, and to post-judgment interest under 28 U.S.C. § 1961 from that date until the judgment is satisfied.

## BACKGROUND

By way of refresher, nearly nine years ago Trendsettah won a jury trial against Swisher International, by which Trendsettah was awarded $9,062,679 on its breach of contract claims, and $14,815,494 on its Sherman Act claims. Slip Op. at 5. The district court initially vacated the antitrust verdict, but that verdict was restored by this Court in the first appeal. *Id.* Thereafter, Trendsettah's former CEO was indicted for conspiring to evade federal excise taxes. *Id.* At that point Swisher moved under Federal Rule of Civil Procedure 60(b)(2) and (3), and 60(d)(3), to have the verdicts vacated again, a motion that the district court granted. *Id.* Unable to afford a second trial, Trendsettah voluntarily dismissed to appeal the district court's Rule 60 orders. In this appeal, the Panel affirmed the district court's vacatur of the antitrust verdict,

but reversed its vacatur of the contract verdict. *Id.* at 6. The Panel accordingly ordered reinstatement of the $9,062,679 verdict for contract damages. *Id.*

The Panel stayed issuance of the mandate pending the filing and disposition of Swisher's petition for *certiorari*. That petition was denied on December 5, and the mandate issued the same day. The mandate reads only, "[t]he judgment of this Court, entered April 15, 2022, takes effect this date," with no instruction as to how interest on the reinstated monetary judgment is to be treated. Dkt. No. 93-2.

## ARGUMENT

**I. THE COURT SHOULD AMEND THE MANDATE TO CLARIFY THE ALLOWANCE OF PRE- AND POSTJUDGMENT INTEREST, WHILE LEAVING THE CALCULATIONS TO THE DISTRICT COURT.**

For two important reasons, this Court should amend the mandate so that it "contain[s] instructions" as to "the allowance of interest," as Rule 37(b) requires. Fed. R. App. Proc. 37(b). First, Rule 37 and its commentary emphasize that the "determination of the question" is to be made by the appellate court, not the district court. *See* Fed. R. App. Proc. 37(b) (providing that the mandate "must contain instructions about the allowance of interest"); Ad. Comm. Note (noting that "the rule directs that the matter of interest be disposed of by the mandate," and that that "determination" is to be made by the appellate court); *see also Planned Parenthood*, 518 F.3d at 1015 (noting that the mandate is "required" to include such instructions);

3

*Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1381 (Fed. Cir. 2003) ("the responsibility and authority for this determination is assigned to the appellate tribunal").

There does not appear to be any precedent under which the appellate court can delegate its responsibility for determining the interest question to the district court, but in any event, this Panel should not do so, for purposes of judicial economy. Given the significant difference between Florida's prejudgment interest rate under Fla. Stat. § 55.03,[1] and the federal post-judgment interest rate under 28 U.S.C. § 1961, delegating this decision to the district court would—with 100% certainty—lead to a third appeal from the aggrieved party.

Although the Ninth Circuit has not been as clear on the point as some other Circuits have, the "interest" referred to in Rule 37 appears to include both pre- and post-judgment interest. *See Northrop*, 842 F.2d at 1155 (noting that the motion to amend the mandate presented issues both as to pre- and post-judgment interest); *see also Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013) ("To the extent the mandate must include instructions on pre-

---

[1] Trendsettah's contract claims arose under Florida law, which applies an interest rate that varies quarterly, and over the last seven years has ranged from 4.25-6.89%. *See* Fla. Stat. §§ 55.03, 687.01.

judgment interest to comply with Rule 37(b) of the Federal Rules of Appellate Procedure, we reform the mandate as such.").

## II. CIRCUIT PRECEDENT AND SUBSTANTIVE FLORIDA LAW REQUIRE THAT PREJUDGMENT INTEREST ACCRUE UP THROUGH THE DATE OF THE FINAL, *ENFORCEABLE*, JUDGMENT.

"Substantive state law determines the rate of prejudgment interest in diversity actions." *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1332 (9th Cir. 1995). In post-trial proceedings, Trendsettah filed a motion for prejudgment interest per the Florida statutory rates, based on Florida Supreme Court authority that prejudgment interest is "an element of damages as a matter of law." D. Ct. Dkt. No. 283 at 3 (quoting *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla. 1985)). Swisher did not oppose that motion, D. Ct. Dkt. No. 301 at 2, so the district court awarded prejudgment interest up through the date of the amended judgment entered December 14, 2016. *See* D. Ct. Dkt. No. 340 at 4.

This Court's controlling precedent in *Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1211 (9th Cir. 1996) (hereafter "*AT&T*") and the Florida precedent of *City of Tallahassee v. Block Land & Finance Co.*, 705 So.2d 714 (Fla. Dist. Ct. App. 1998) require that prejudgment interest continue to accrue "up until the date of the amended final judgment." *Id.* at 714; *see also SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320-21 (11th Cir. 2007) (holding that following appellate proceedings, Florida law requires prejudgment interest to "accrue until the date of

5

the forthcoming amended judgment of the trial court," and that its assessment is "'a purely ministerial duty'" as to which "'no discretion is permitted.'") (quoting *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla. 1985)). The respective dates on which pre- and post-judgment interest attach is very significant in this case, given that Florida prejudgment interest varies quarterly but has ranged up to nearly 7% since the time of the verdict, while post-judgment interest is the rate of the 1-year constant-maturity Treasury bill, which at the time of the first judgment six years ago was 0.55%. 28 U.S.C. § 1961.

Beginning with this Circuit's precedent, *AT&T* explained: "The general rule is that when an appellate court reverses a judgment of the district court and directs that a money judgment in favor of a claimant be entered upon remand, prejudgment interest runs through the date of the newly-entered judgment." 98 F.3d at 1209. The Court then noted that prior precedent had suggested an "exception" to that general rule, under which post-judgment interest could attach as of the date of the *original* judgment, where that judgment constituted a "legally sufficient determination of damages." *Id.* Undertaking a thorough examination of the caselaw, however, the Court observed that the "exception" had been created "to 'ensur[e] that the plaintiff is further compensated for being deprived of the monetary value of the loss from the date of ascertainment of damages until *payment* by defendant.'" *Id.* at 1209 (quoting

6

*Northrop*, 842 F.2d at 1156 (in turn quoting *Turner v. Japan Lines Ltd.*, 702 F.2d 752, 756 (9th Cir. 1983)) (emphasis added).

The *AT&T* court then recognized that it was faced with "the flip side" of the rationale that had supported the "exception" in *Northrop*, because "[h]ere the postjudgment interest rate is *less* than the prejudgment interest rate, and it is the losing party who asks that postjudgment interest begin at the time of the initial judgment, while the prevailing party seeks to have postjudgment interest run from the date of the later judgment." 98 F.3d at 1210 (emphasis in original). Surveying dozens of precedents, the court found that in *every* case in which the "exception" had been applied so as to run post-judgment interest from the initial judgment instead of the post-remand judgment, it "appears always to have favored the prevailing party." *Id.* at 1211 & n. 2. From those observations the court announced this Circuit's rule when faced with the question of the date that separates pre- and post-judgment in the circumstance of "two judgments both of which sufficiently ascertain the damages":

> Where a prior judgment awarding damages has been vacated pursuant to the actions of an ultimately losing party, equitable principles favor calculating the interest in a manner that more fully compensates the prevailing party. Any other result would penalize the prevailing party, and in certain circumstances might also encourage losing parties to instigate postjudgment litigation so they can reap the benefits of a low interest rate.

*Id.* at 1211.

7

The rationale supporting that rule is fully present here. Swisher avoided payment of the $9 million contract damages judgment back in 2016 by a hopeless cross-appeal of even that verdict. *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 761 F. App'x 714 (9th Cir. 2019). Three years later when the verdict on *all* claims was affirmed, Swisher again avoided payment of the contract verdict by claiming "fraud on the court" where there was none. Slip Op. at 21. By those error-inducing actions in the district court, Swisher has avoided paying Trendsettah's fully "ascertained" contract damages for over six years, and now would have the time-value of Trendsettah's money compensated at just a fraction of one percent. *AT&T* does not permit that result. 98 F.3d at 1211.

In opposition, Swisher might latch on to the word "equitable" from *AT&T*, to argue that since Trendsettah is "bad" and Swisher is "good," the Court should evaluate the "equities" to further penalize Trendsettah by imposing a negligible interest rate. But even if that general sentiment were correct,[2] *AT&T* is not concerned with whether the plaintiff or the defendant is more righteous in a *general* sense; the "equitable principle" it applies is only that the "prevailing party" should

---

[2] Recall from the main appeal that there was never any doubt that Swisher had in fact breached its contracts with Trendsettah, nor that it had in fact violated section 2 of the Sherman Act, which is both a civil and criminal wrong. *See* 15 U.S.C. § 2.

8

be most fully compensated "for the loss of use of its money due to the delay occasioned by [the losing party's] actions." *Id.* Here, Trendsettah came to this appeal with a judgment of $10.4 million against it for Swisher's attorneys' fees, D. Ct. Dkt. No. 621 at 14, and came out the other side with a $9 million judgment in its favor. That $20-million swing in fortunes undoubtedly makes Trendsettah the "prevailing party" on this appeal. So under *AT&T* it is entitled to the higher rate of prejudgment interest through the date that the district court enters its amended judgment.

While the respective dates for attaching pre- and post-judgment interest are presumably procedural matters controlled by federal law, application of Florida law would yield the same result. In Florida "prejudgment interest must be awarded from the date of the loss," and "[t]he trial court has no discretion with regard to awarding prejudgment interest and must do so applying the statutory rate of interest." *Summerton v. Mamele*, 711 So.2d 131, 133 (Fla. Dist. Ct. App. 1998) (citing *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla. 1985)). In *SEB S.A. v. Sunbeam Corp.*, the Eleventh Circuit considered whether Florida would run prejudgment interest through the date of only an initial judgment, or through the date of an amended judgment that finally becomes enforceable. 476 F.3d 1317, 1320 (11th Cir. 2007). It concluded that Florida requires prejudgment interest to "accrue until the date of the forthcoming amended judgment of the trial court." *Id.* (citing

9

*City of Tallahassee v. Block Land & Finance Co.*, 705 So.2d 714 (Fla. Dist. Ct. App. 1998)).

Also like this Circuit's rule in *AT&T*, when awarding prejudgment interest Florida courts are not concerned with moral evaluations of which party is "right" and which party is "wrong." Instead, in Florida "entitlement to prejudgment interest is governed by the 'loss theory.'" *Burton Family Partnership v. Luani Plaza, Inc.*, 276 So.3d 920, 923 (Fla. Dist. Ct. App. 2019). Under the loss theory, prejudgment interest is not imposed based on a "wrongful" act by the defendant, but merely to make the plaintiff "'whole from the date of the loss once a finder of fact has determined the amount of damages.'" *Id.* (quoting *Argonaut*, 474 So.2d at 215). Here, Trendsettah has been deprived of the use of its money embodied in the contract award since the time of filing in October 2014 (as the district court found, D. Ct. Dkt. No. 340 at 4 n.1) through the present, and will continue to be deprived of that money up until the time that the district court enters an enforceable award on remand. Under *City of Tallahassee* and Florida's underlying "loss theory" of interest, if this case were pending in Florida courts, Trendsettah would likewise be entitled to prejudgment interest up through "the date of the forthcoming amended judgment of the trial court." *Sunbeam*, 476 F.3d at 1320.

## CONCLUSION

In hopes of forestalling a third appeal over pre- and post-judgment interest,

the Court should recall and amend the mandate pursuant to Rule 37(b), to clarify that Trendsettah is entitled to prejudgment interest (on all such amounts as to which prejudgment interest is properly assessed[3]) up through the date that the district court enters an amended judgment in this matter, and to post-judgment interest under 28 U.S.C. § 1961 thereafter.

Respectfully submitted,

s/ *Mark Poe*
Mark Poe
Randolph Gaw
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 766-7451

Thomas C. Goldstein
Eric F. Citron
Erica Oleszczuk Evans
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
(202) 362-0636

## CIR. R. 27-1 STATEMENT

The undersigned contacted Swisher's counsel to ascertain Swisher's position

---

[3] The Court need not itemize each of the various elements in its amended mandate, but, for example, Trendsettah is likewise entitled to prejudgment interest on its costs. *See, e.g.*, *SCIE LLC v. XL Reinsurance Am., Inc.*, 397 F. App'x 348, 352-53 (9th Cir. 2010).

on this motion, and was advised that Swisher opposes and will file an opposition brief within the time allotted by the rules.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,572 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 Times New Roman 14 point font.

/s/ *Mark Poe*
Mark Poe